HORNSBY, Chief Justice.
Wiregrass Electric Cooperative, Inc. (“Wiregrass Electric”), appeals from a denial of attorney fees sought under the authority of Ala.Code 1975, §§ 37-14-9(b) and -37(b). We affirm.
On March 20, 1992, Wiregrass Electric sued the City of Dothan, its mayor, and the members of the city commission (hereinafter collectively referred to as “Dothan”), seeking a judgment declaring that, under § 37-14-4(5), a part of the 1984 Service Territories for Electric Suppliers Act (“the 1984 Act”), and § 37-14-33(5), a part of the 1985 Service Territories for Electric Suppliers Act (“the 1985 Act”), Wiregrass Electric, rather than Dothan, was the rightful supplier of electric service to a Sunbelt Golf Complex facility under construction along Dothan’s city limit. The controversy as to which of those two entities had the right to supply Sunbelt Golf’s electrical needs arose because in 1984, pursuant to the 1984 Act, Dothan had exercised an option to purchase the electric servicing facilities of Wiregrass Electric for the area encompassing Sunbelt Golf. However, Do-than had not yet consummated the purchase, and the parties disagreed as to whether § 37-14-4(5) of the 1984 Act and § 37-14-33(5) of the 1985 Act produced inconsistent results regarding the relative rights of electric suppliers during the period between the exercise of an option to purchase and consummation of the purchase. Although Dothan was not yet servicing Sunbelt Golf, Wiregrass Electric’s complaint, filed on March 20, 1992, also included a count seeking an injunction to prevent Dothan from supplying Sunbelt Golf with electric service.[1]
On May 5, 1992, the trial court held that Dothan was the rightful supplier of electric service to Sunbelt Golf. Thereafter, on May 7, 1992, Dothan began constructing electrical distribution lines to service Sunbelt Golf. On May 8,1992, Wiregrass Electric moved for a stay to prevent that construction pending an appeal to this Court. The trial court denied the stay. On August 14, 1992, this Court reversed the judgment for Dothan and remanded the cause, holding that under the 1984 and 1985 Acts, construed in pari materia, until Dothan consummated the purchase Wiregrass Electric had “the right ... to provide electric service to any new premises located closer to Wiregrass Electric’s existing distribution lines than to ... Dothan’s existing distribution lines.” Wiregrass Electric Coopera *971 tive v. City of Dothan, 605 So.2d 1207, 1210 (Ala.1992).
On remand, the trial court entered a judgment in favor of Wiregrass Electric. Then, Wiregrass Electric moved to recover attorney fees from Dothan under the authority of §§ 37-14-9(b) and -37(b). The trial court denied attorney fees, holding that, because Dothan did not commence construction of any electrical servicing facilities until after the trial court had ruled in its favor, §§ 37-14-9(b) and -37(b) did not authorize the recovery of attorney fees. We agree.
“The general rule in Alabama ... is that attorney’s fees are not recoverable as damages, in the absence of a contractual or statutory duty, and a few other exceptions on equitable principals.” Porter v. Hook, 554 So.2d 382, 386 (Ala.1989), and cases cited therein. As previously indicated, in its complaint filed on March 20, 1992, Wire-grass Electric sought both a declaratory judgment and an injunction. Wiregrass Electric contends that its injunction was authorized by §§ 37-14-9 and -37, from the 1984 and 1985 Acts, and that those sections authorize an award of attorney fees.[2]
Sections 37-14-9 and -37 are identical. They provide, in pertinent part:
“(a) If an electric supplier commences construction of facilities in violation of the provisions of this article, any aggrieved electric supplier which is designated herein as the entity to provide such service (the ‘aggrieved electric supplier’) may petition the circuit court for the judicial circuit in which the facilities are being constructed by the offending electric supplier for an injunction to prevent the offending electric supplier from completing the facilities for provision of the retail electric service in question.
“(b) If an electric supplier believes that another electric supplier has already . rendered or extended electric service at retail to a premise which was designated to be served by the aggrieved electric supplier, the aggrieved electric supplier shall give notice in writing to the offending electric supplier of the potential violation of this article. ... If the offending electric supplier does not cease rendering service and remove its distribution facilities within the 45-day period ..., the aggrieved electric supplier may file suit in the circuit court for the judicial circuit in which the rendition or extension occurs to enjoin the offending electric supplier from continuing such rendition or extension and for damages. If a violation of this article is proved, ... the offending electric supplier shall reimburse the aggrieved electric supplier for all witness fees, court costs, reasonable attorneys fees and other expenses incurred in any litigation to enforce the aggrieved electric supplier’s rights under this article.”
Only subsection (b) of § 37-14-9 and -37 authorizes a recovery of attorney fees. Further, because of the word “shall,” emphasized in the quoted language, the trial court has no discretion regarding the assessment of attorney fees under subsection (b). Thus, the issue presented by this appeal is whether the injunction sought by Wiregrass Electric was authorized by §§ 37-14-9(b) and -37(b).
Specifically, §§ 37-14-9(b) and -37(b) authorize an injunction only against a supplier that is already rendering or extending electric service to premises designated to be served by the aggrieved supplier. Although in this case the 1984 and 1985 Acts governed the propriety of the trial court’s decision as to whether to issue an injunction against Dothan, when Wiregrass Electric sued for the injunction Dothan had not yet commenced construction of electric servicing facilities and was not rendering or extending service to Sunbelt Golf. Dothan did not begin construction of distribution lines to Sunbelt Golf until May 7, 1992, after the trial court had held it to be the rightful supplier of electric service. Therefore, although the 1984 and 1985 Acts gov *972 erned the propriety of the trial court’s decision as to whether to issue an injunction in favor of Wiregrass Electric, §§ 37-14-9(b) and -37(b) did not authorize the injunction sought by Wiregrass Electric. Accordingly. §§ 37 — 14—9(b) and -37(b) do not authorize an assessment of attorney fees against Dothan.
AFFIRMED.
MADDOX, SHORES, HOUSTON and KENNEDY, JJ., concur.

. Wiregrass Electric wrote Dothan on three occasions, May 21, 1991, November 14, 1991, and January 8, 1992, informing Dothan that it intended to supply Sunbelt Golfs electrical needs and asking Dothan if it would contest Wiregrass Electric's right to provide service. Dothan responded by letter dated February 20, 1992, stating that it intended to supply Sunbelt Golf.

. Wiregrass Electric’s declaratory judgment action was authorized by Ala.Code 1975, § 6-6-220 et seq., the Alabama Declaratory Judgment Act. That Act does not authorize an award of attorney fees.